IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

  vs.                                      CASE NO.: 4:22-CR-00580-(JD)

ANDREW SAWYER

      Defendant.

_____/

**SENTENCING MEMORANDUM IN SUPPORT OF A PROBATIONARY SENTENCE**

Comes now Defendant Andrew Sawyer, by and through undersigned counsel, to ask for a small variance for a probationary sentence. A probationary sentence for this non-violent felony offender is "sufficient but not greater than necessary" to satisfy the 18 USC § 3553(a) factors and is consistent with the Congressional intent in 28 U.S.C. § 994(j), which states a probationary sentence is appropriate for a non-violent, first-time offender. A probationary sentence is just punishment for Sawyer as it will provide general and specific deterrence while also avoiding unwarranted disparities with other defendants in this investigation.

While it is true that every person is unique, Sawyer is among the most unique persons that counsel has met. He was a successful real estate agent for two decades who stopped selling homes to devote himself to being a full-time caregiver. He cared for his disabled partner Kristy and for elderly chimpanzee Joey, who suffers from serious medical issues. Kristy died last June at the hospital with Andrew at her bedside. Before her passing, Kristy wanted to speak with you about Sawyer. Kristy's message is included in our sentencing video. The sentencing video is accessible

1

at https://app.box.com/s/cp3jychcl970jwb1ydjz5gvaakbih6u6.  (A thumb drive of this 16-minute video will also be provided to Chambers and to the government.)

## I. Guidelines Range and Issues.

There are no objections to the guideline calculation in the PSR.  The initial sentencing guideline calculation in this case an offense level of 15 with zero criminal history points for a guideline range of 18-24 months.  PSR para. 75.  For the reasons outlined in ECF 321 (sealed filing), a departure in the Court's discretion is warranted.  A 4-level reduction reduces the guideline range to 8-14 months before evaluating any of the variance grounds.

**II.     Grounds for Variance**

   **a. Limited role in the offense**

Sawyer qualified for a minor participant reduction in this case. A variance for his limited role is also appropriate.

The idea for the money laundering transactions in this case was initiated by the FBI, which used an informant who knew co-defendant Antle. The informant was working off his charges. Counsel believes that the informant later pled to a misdemeanor offense. Counsel anticipates that the informant has received or will be receiving a probationary sentence.

The target of the FBI operation was co-defendant Antle. At the initial meeting in December 2021, Antle and the informant discussed laundering cash. The informant initiated the topic.

Sawyer was not the target of the FBI operation and was not at the December 2021 meeting. Antle employed Sawyer, and Sawyer was useful in exchanging cash for a bank check as his wife had a sizeable account at the local bank, which resulted from her inheritance from her father.

Antle asked Sawyer to help. Sawyer was told that he and Antle would provide checks to the informant, whom they knew, in exchange for cash.

On three occasions in early 2022, Antle and Sawyer received cash from the informant working under the direction of the FBI. The FBI provided the cash to the informant. The amounts of cash at issue were chosen by the FBI. Neither Antle nor Sawyer asked the informant to bring a specific sum to them. The informant handed a grand total of $505,000 to Antle and Sawyer. The checks provided by Antle and Sawyer were for $431,500. The first two checks were drawn from Sawyer's account, while the third check was from Antle's account. The difference of $73,500 was

the 15% fee that Antle and the FBI informant agreed upon. PSR para. 15. Sawyer was to receive a split of the fee from the first two transactions.

On June 3, 2022, Sawyer was arrested. He was released from detention on June 17, 2022. Immediately thereafter he took federal agents to the location where the cash was being stored. None of the cash had been spent.

Since his release from jail three years ago, Sawyer has had no issues of misconduct. He has worked, mostly without pay, long hours to take care of the retired primates at Antle's Safari.

Sawyer received a minor role reduction in his PSR. Sawyer's limited role after being recruited to participate is a reason for a variance in addition to the minor role reduction.[1]

### b. Money laundering amount chosen by law enforcement overstates the seriousness of the offense

The sentencing guideline calculation is driven primarily by the amount of money that was provided by the FBI in the offense. This guideline has been criticized for being arbitrary in that the guideline range is driven by the amount of money involved rather than by the offense conduct.[2]

---

[1] See U.S. v. Restrepo, 936 F.2d 661 (2d Cir. 1991) (based on minimal role in a money laundering offense – merely unloading boxes of money in a warehouse on one date – defendant received both a four-level offense level reduction and a four-level downward departure). Many of the footnotes herein refer to pre-Booker cases that dealt exclusively with departures. Now that we are post-Booker, Sawyer is requesting a variance based upon similar reasons to the cited cases.

[2] U.S. v. Carter, 538 F.3d 784 (7th Cir. 2008) (where 61 year old defendant convicted of money laundering and tax fraud with guidelines of 87-108 months, district court's sentence of 24 months reasonable in part because district court properly found that case was atypical and referred to a 1997 report by the Sentencing Commission. See Sentencing Policy for Money Laundering Offenses, United States Sentencing Commission (Sept. 18, 1997), available at http://www.ussc.gov/r_congress/LAUNDER.PDF. That report states that the "relatively high base offense levels under the money laundering guidelines," id. at 4, are "inflexible and arbitrarily determined" without connection "to the seriousness of the defendant's actual offense conduct," id. at 9....The Commission concluded from its investigation that the sentencing structure was generating disproportionate penalties for violations of federal laws in that serious misconduct was not being punished more severely than less serious offenses and that the structure should be recalibrated to reflect directly the seriousness of the underlying offense. Id. at 10"). As it relates to Sawyer's case, the laundering was of law enforcement funds, not of proceeds from an actual criminal conspiracy.

The offense conduct is that the informant approached Antle, Antle asked Sawyer to assist, and Sawyer went to the bank two times.

This guideline range was effectively selected or manipulated by the case agents, not by Antle and Sawyer. The FBI came up with the idea of how much cash to give to the informant and instructed the informant on how to offer it to Antle. The FBI chose to offer cash on three different dates to increase the guidelines range calculation. Had the FBI made the arrest after $30,000 was transacted, Sawyer's offense level would have been 8 levels lower. The government's choice to inflate the guidelines range is a reason for a variance.[3]

Sawyer and Antle were to receive a small fee (roughly 15%) for exchanging the FBI cash for a check. The total fee negotiated by the informant with Antle was $73,500. The fact that the anticipated profit is a significantly smaller amount than the FBI produced cash is a ground for a variance.[4]

### c. Sawyer did not spend any of the cash or profits

Moreover, none of the cash was spent or dispersed before Sawyer returned the full amount to the agents. The fact that Sawyer did not spend the profits or use the profits is a ground for a variance.[5]

---

3 *See* U.S. v. Shepherd 857 F.Supp. 105 (D.D.C.,1994)(where defendant convicted of distribution of crack, "sentencing manipulation" occurred when undercover officer asked defendant to cook cocaine powder, not for legitimate investigation purposes, but solely to increase punishment by converting substance into crack, so court applies guidelines provisions that would have applied absent manipulative conduct of agent.)

4 *See* U.S. v. Stuart, 22 F.3d 76 (3d Cir. 1994) (although face value of bonds was $129,000 which determined offense level, the small profit actually might warrant a downward departure by analogy to §2F1.1 which states that strict application of the loss table can overstate the seriousness of the offense).

5 *See* U.S. v. Threadgill 172 F.3d 357, 376 -377 (5th Cir. 1999) (departure warranted in part because the defendants' conduct was atypical in that they never used the laundered money to further other criminal activities. Based on those two factors, the district court departed downward under U.S.S.G. § 5K2.0, sentencing each of the defendants to 42 months imprisonment).

### d. No prior criminal arrests for Sawyer, who is 55 years of age

Sawyer has never been arrested prior to this case. While his lack of criminal history is recognized in the guideline calculation, this Court may grant a variance since Sawyer was 52 years of age before committing his first offense.[6] In a case similar to this case, the *en banc* Third Circuit affirmed a downward departure to house arrest in a tax evasion case where the defendant had a "minimal criminal record." See U.S. v. Tomko, 562 F.3d 558 (3d Cir. 2009) (en banc) (where defendant convicted of tax evasion of $225,000, and guidelines 12-18 months, court's sentence to probation on condition of one year home detention and fine of $150,000 not unreasonable in part because of defendants "minimal criminal record").

Additionally, as it relates to specific deterrence, studies show that older defendants are less likely to reoffend. Sawyer's age, 55 supports a finding that he is unlikely to commit future offenses and is an appropriate ground for a variance.[7] This factor will be discussed in more detail in the deterrence section III of this pleading.

---

[6] See U.S. v. Ward, 814 F.Supp. 23 (E.D.Va. 1993) (departure warranted because guidelines fail to consider length of time defendant refrains from commission of first crime, here until age 49).

[7] See *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 12, 28 (2004) (available at www.ussc.gov/publicat/Recidivism_General.pdf) ("recidivism rates decline relatively consistently as age increases."). The Fourth Circuit has found deterrence to be a proper ground for a variance. *See* U.S. v. Pauley, 511 F.3d 468 (4th Cir. 2007) (where client pled to possession of child porn. and guidelines 78-97 months, court's downward variance to 42 months affirmed in part because, as district court noted, that "a lifetime of supervised release would reduce the risk of Pauley becoming a repeat offender and would deter him from future criminal conduct...[is a ]valid consideration[] under § 3553(a)").

### e. Sawyer is a devoted caregiver to people and animals

The sentencing video shows that Sawyer has devoted his life to caring for his disabled significant other Kristy Pruett and Joey, the disabled, elderly chimpanzee. Sawyer's unselfish and unrelenting care for Kristy is a ground for a variance.[8]

Sawyer's unselfish and unrelenting care for Joey is a ground for a variance.

Joey's need for continued high-intensity care from Sawyer, which cannot be provided from prison, is a ground for a variance.[9] While primate rescue refuges exist in this country, none have taken Joey on. This is because of Joey's age, health, and the nature of the social structure of chimps. The concern is that Joey would be killed by other chimps at a rescue and that the rescue is unable to attend to Joey's medical needs. Also, chimps must trust the human caregiver. Sawyer has earned Joey's trust. As it currently stands, Sawyer is critically important to caring for Joey.

When released for pretrial detention, Sawyer was unable to be paid for his work at the Safari since Antle is the co-defendant. Nevertheless, Sawyer worked long hours (from 4 a.m. until 10 p.m., 7 days per week) to care for Joey and the other retired primates, animals that were no longer able to interact with tourists. The fact that Sawyer tended to Joey and the other retired primates without pay while out on pretrial release is a ground for a variance.

---

8 U.S. v. Adelson 441 F. Supp.2d 506 (SDNY 2006 )(in securities fraud case, where guidelines call for life sentence, court imposes 42 month sentence in part because of the defendant's past integrity and many good deeds. "But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant.")

9 See U.S. v. Husein 478 F.3d 318 (6th Cir. 2007) (where defendant convicted of participating in drug transactions, where guidelines 40 months, sentence of one day in prison and 270 days home confinement warranted in part where district judge properly determined that defendant's family would "benefit more by [defendant's] presence than society is going to benefit from [her] incarceration."); United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) ("The rationale for a downward departure here is not that [the defendant's] family circumstances decrease her culpability, but that we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing."…"

### III. A sentence of probation in this case is a severe and just punishment that satisfies the §3553(a) factors

#### a. A felony conviction with probation is a severe punishment for Sawyer.

A felony conviction is, in and of itself, a severe and lifelong punishment. "The stigma of a felony conviction is permanent and pervasive." See U.S. v. Smith 683 F.2d 1236, 1240 (9th Cir. 1982).

The severity of a felony conviction with a probationary sentence has been recognized by the Supreme Court of the United States as "a substantial restriction of freedom." Gall v. United States, 552 U.S. 38 (2007).

President George W. Bush recognized the severity and permanence of the stigma of a felony conviction when commuting the sentence of his aide, Lewis "Scooter" Libby on July 2, 2007 (found at http://www.whitehouse.gov/news/releases/2007/07/20070702-3.html ("the prison sentence given to Mr. Libby is excessive. Therefore, I am commuting the portion of Mr. Libby's sentence that required him to spend 30 months in prison…The reputation he gained through his years of public service and professional work in the legal community is forever damaged. His wife and young children have also suffered immensely. He will remain on probation…The consequences of his felony conviction on his former life as a lawyer, public servant and private citizen will be long-lasting.").

The stigma of being a felon has already impacted Sawyer. Sawyer was a licensed real estate agent in Arizona and Nevada. He is unable to renew these licenses due to the felony arrest in this case.

In imposing a sentence, it is appropriate to consider what restrictions a person encountered prior to sentencing. Sawyer spent two weeks in the detention center before being released. Once

8

he was released, he was unable to be paid by Antle for his work taking care of the retired primates. He worked selflessly for no pay. For three years Sawyer was effectively on house arrest spending long days and nights caring for Kristy and the retired primates.[10]

### b. Deterrence is satisfied by a felony conviction followed by probation

#### i. General deterrence is satisfied by a felony conviction with probation

Social science research shows that general deterrence is satisfied by the certainty of punishment rather than the severity.[11] It is a fallacy that more general deterrence will be provided by a guideline sentence than by a variance to probation in this case.12

---

10 *United States v. Romualdi,* 101 F.3d 971(3d Cir.1996)("it may be proper to depart because of the ... home detention [a defendant] had already served.").

11 Empirical research on general deterrence shows that while *certainty* of punishment has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects . . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. *See* Andrew von Hirsch, et al, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999). The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. It examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." The report concludes, "[T]he studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects."

12 U.S. v. Edwards 595 F.3d 1004 (9th Cir. 2010) (where defendant convicted of bankruptcy fraud and on probation for prior state conviction for fraud and where guidelines range 27-33 months, sentence of probation seven months of which was to be served under house arrest, and $5,000 fine, and restitution of $100,000 not abuse of discretion in part because "Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration." and citing legislative history: "It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose. S. Rep. No. 98-225, at 92 (footnote omitted).; U.S. v. Baker, 502 F.3d 465 (6th Cir. 2007) (where defendant pled guilty to possession of unregistered firearm arising from altercation with wife during which gun accidentally discharged and guideline range 27-33 months, below-guideline sentence of probation with one year house arrest in part because incarceration not necessary to protect the public).

### ii. Specific deterrence is satisfied by a felony conviction with probation

The issue at the core of the § 3553(a) analysis is whether someone will reoffend. *Pepper v. U.S.* 131 S.Ct. 1229, 1242 (2011) (The likelihood that defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence.")

As introduced previously in the section on Sawyer's age, there is no reason to anticipate that Sawyer will recidivate. He had no issues in law enforcement for 52 years prior to this arrest. After this arrest, he has had three years of pretrial release without a single incident. And his advanced age for a first-time offender suggests that he has "aged-out" of future misconduct.

The Eighth Circuit affirmed a departure to probation because the district court found that defendant was not likely to recidivate. *U.S. v. Hadash* 408 F.3d 1080, 1084 (8th Cir. 2005) (where defendant pled guilty of possession stolen firearms with guidelines 12 to 18 months, the district court reasonably departed downward by six levels because the district court said the defendant was simply "a law abiding citizen, who [did] an incredibly dumb thing" and said that the defendant "was not the type of defendant the guidelines section was designed to punish.").

Like the defendant in Hadash, Sawyer was a "law abiding citizen, who [did] and incredibly dumb thing." Sawyer will not reoffend and poses no danger to the public.

### c. A probationary sentence avoids unwarranted disparities

A probationary sentence for Sawyer is consistent with how co-defendants have been treated in this case.

First, the FBI informant is believed to have been arrested on a serious felony charge. Defense counsel believes that the government allowed him to plead to a misdemeanor that did

10

not/will not result in a custodial sentence. The government will be able to provide the details of the informant's charges and disposition.

Second, Meredith Bybee faced two counts and pled to a single misdemeanor count. ECF 203. She was sentenced to 12 months probation. ECF. 220. Since her sentencing occurred on September 27, 2023, she has been off of supervision for almost a year.

Third, Charles Sammut, who was charged with four counts, including a more serious offense of trafficking animals, rejected the plea offer. The government dismissed his charges in February 2023. ECF 191, 192. Thus, he served no sentence and was on pretrial release for less than one year.

Finally, Jason Clay and Doc Antle are pending sentencing. One or both may receive a probationary sentence.

A probationary sentence is appropriate for Sawyer for many reasons. Avoiding unwarranted disparity is an important factor that weighs in favor of a probationary sentence.

### d. Congressional intent supports probation for a first offender with a non-violent offense

28 U.S.C. § 994(j), Congress stressed "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense".[13] Sawyer meets the Congressional criteria.

---

13 See U.S. v Polito, 215 Fed.Appx. 354, 2007 WL 313463 (5th Cir. Jan. 31, 2007 ) (unpub.) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because first offense); U.S. v. White 506 F.3d 635 (8th Cir. 2007) (in case of distribution of child porn case where guidelines 108-135, variance to 72 months proper in part because first offense, rejecting government's argument that court may not consider defendant's lack of prior record because already taken into account by guidelines; after Booker, court can consider lack of criminal record apart from the guidelines)

Additionally, if the Court deems it necessary, the Court has the discretion to sentence Sawyer to home incarceration instead of prison. If the Court permitted home incarceration with leeway to move within 100 yards of his home, then Sawyer would be able to care for the retired primates and Joey while Sawyer serves his sentence. With this arrangement, Sawyer would serve his sentence without inadvertently imposing punishment on the innocent animals.[14]

---

14 U.S. v. Coughlin  2008 WL 313099 (W.D. Ark. Feb. 1, 2008) (unpub.)  (where D was former CEO of Walmart who embezzled money and evaded taxes and guidelines 33-41 month, sentence of probation **with home detention for 27 months**  imposed in part because "Home detention and probation can be severe punishments...hugely restrictive of liberty, highly effective in the determent of crime and amply retributive"—and because "That form of punishment is especially appropriate in cases such as Coughlin's, where there is little concern for future criminal activity on the part of the defendant and the defendant is in need of medical attention.... it is the opinion of this Court that sentences of home detention and probation, made permissible through departure and variance, can provide ample opportunity for sentencing judges to exercise their discretion in favor of alternatives to imprisonment when such alternatives accomplish the goals of criminal punishment.."

### IV.     Conclusion – probation is not 'greater than necessary'

In <u>Kimbrough v. U.S.</u>, the Supreme Court held that the district court "may determine... that in the particular case a within Guidelines sentence is 'greater than necessary" to serve the objectives of sentencing". 552 U.S. 85, 91 (2007). In Kimbrough, the district court's below guideline sentence in a drug case was not unreasonable because "it appropriately framed its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary to accomplish the goals" of sentencing". <u>Id.</u> at 111.

Whether Sawyer deserves a probationary sentence is not the question. The question is whether a custodial sentence is 'greater than necessary' to achieve the goals of §3553(a)? The answer is that probation is an adequate sentence for this 55-year-old caregiver with no other criminal record.

For the reasons stated above and for other good cause, counsel begs the Court to impose a probationary sentence.

Respectfully submitted,

s/ Christopher W. Adams
Christopher W. Adams
SC Fed Bar No. 10595
ADAMS BISCHOFF LLC
171 Church Street
Suite 360
Charleston, SC 29401
843-277-0090
chris@adamsbischoff.com

*Attorney for Andrew Sawyer*

Date: June 5, 2025

13

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of this document has been served on the above-referenced date upon all parties through the Court's electronic filing system.

s/ Christopher W. Adams
Christopher W. Adams

*Attorney for Andrew Sawyer*
